## WENBORNE–KARPEN DRYER CO. v. ROCKFORD BOOKCASE CO.

(District Court, N. D. Illinois, W. D.   January 18, 1921.)

1. Patents ⬅328—1,186,477, claims 2 and 4, for process for drying and hardening siccative coatings, held to disclose invention.

The William M. Grosvenor patent, No. 1,186,477, claims 2 and 4, for a process for drying and hardening siccative coatings, *held* to disclose invention, though it only applied to the oxidization of such coatings a process similar to that applied to the drying of lumber.

2. Patents ⬅18—Simplicity of process does not defeat patentability.

That a patented process was simple and apparently easily obtained does not militate against its patentability.

3. Patents ⬅328—1,186,477, for process for drying and hardening siccative coatings, held not anticipated.

The William M. Grosvenor patent, No. 1,186,477, for a process for drying and hardening siccative coatings, *held* not anticipated by an article on drying paints, by prior patents for drying lumber or other materials containing moisture, or by a somewhat similar prior use introduced for a different purpose and thereafter abandoned.

4. Patents ⬅328—1,186,477, claims 2 and 4, for process for drying and hardening siccative coatings, held infringed.

The William M. Grosvenor patent, No. 1,186,477, claims 2 and 4, for a process for drying and hardening siccative coatings, *held* infringed by a process which, like the patented process, used steam and circulating air, though the thermometer and hygrometer were not consulted, as in the patented process.

In Equity.   Suit by the Wenborne-Karpen Dryer Company against the Rockford Bookcase Company for infringement of a patent.   Decree rendered finding patent valid and infringed, with reference for an accounting.

William R. Rummler, of Chicago, Ill., and Cyrus W. Rice, of Grand Rapids, Mich., for plaintiff.

J. William Ellis, of Buffalo, N. Y., and Rector, Hibben, Davis & Macauley, of Chicago, Ill., for defendant.

CARPENTER, District Judge.   Suit is brought for the infringement of claims 2, 3, and 4 of patent No. 1,186,477, issued June 16, 1916, on application filed November 20, 1908, by William M. Grosvenor.   The patent covers a "process for drying and hardening siccative coatings."

Siccative coatings are such as varnish, oil paints, and oil containing fillers, which harden by oxidization.   It is common to refer to fresh paint as wet paint, but as a matter of fact it is not wet, in the sense that it contains water that disappears by evaporation.   The hardening of paint is a chemical action—an oxidization.   The evaporation of water is a physical process.

The object of Grosvenor's patent was twofold:   First, to harden the coatings rapidly; and, second, to produce coatings superior to those treated by other processes.

The Grosvenor process, so far as indicated in claims 2 and 4 of the patent, is not new in other arts.   In its simplest form it consists of simultaneously adding heat and moisture to the air surrounding the siccative coatings.   Substantially the same process has been used for

years for the purpose of drying lumber. It was learned early that if lumber were subjected to artificial heat it would dry rapidly, but the outside would become case-hardened. Steam vapor was therefore introduced into the drying chamber simultaneously with the heat circulation procured by fans, etc., and in that way the outside drying retarded until the inside drying caught up, and the whole dried thoroughly and evenly.

The only question in this case is whether the application of the old lumber dry-kiln methods, to harden siccative coatings, is patentable. It is unnecessary to collect the cases on the general subject of applying an old device to the same or an analogous art, or those holding that making use of the old device to produce a new result is invention within the meaning of the statute.

[1, 2] The record discloses that for many years prior to the introduction of the Grosvenor process it required from 18 to 48 hours to harden thick varnish, whereas under the new process the same result was reached in from 6 to 8 hours. Considering that in the piano trade and automobile trade several coats of varnish are necessary, the saving in time brought about by this process was a very material thing. That the Grosvenor process was simple and apparently easily obtained does not militate against its patentability. The simpler a device or process is, the more astonishing the fact that others in the same art did not appreciate its practical use. It is my opinion that Grosvenor marked a distinct advance in the hardening of siccative coatings.

The so-called dryng of paints and varnishes is not the same as evaporating moisture from wood or other products, nor does the use of the earlier lumber dry-kiln process even suggest that it might be used to dry paints. For years it was supposed that the introduction of moisture would delay the hardening, and it is a matter of common knowledge that efforts were made generally to keep water away from fresh paint. It seems to me that for a man to comprehend the idea that a process used in one art may be of equal value in another is as much a matter of invention as the creation and working out of the original process.

### As to the Defenses.

"The defense mainly relied on in this case is that the alleged invention of the patent in suit (so far as covered by the claims in issue) consisted in the mere application of an old and well-known process to a new object." This I have disposed of, being of the opinion that the old and well-known process referred to was not only applied in a different art, but with a new and different result.

It required genius to discover, by experimentation or otherwise, that the old process was suitable for the new use, and would produce a beneficial result theretofore unforeseen. It is perfectly apparent that the suitable hardening of substances like a siccative film, which were primarily hardened by oxidization, was not suggested by the drying of substances like a porous block of wood, which were primarily dried by evaporation, because before the appearance of the Grosvenor process no one apparently thought of so treating varnished articles. As a matter of fact, it was the consensus of opinion that

269 F.—10

moisture was one of the greatest obstacles to the rapid drying of varnish.

[3] The second defense is anticipation. The patents in the prior art relied upon by the defendant are Schultze, No. 519,352; Victorson, No. 507,512; Gathmann, Nos. 763,387 and 763,388. Great stress was also placed upon an article entitled "Pigments, Paints, and Painting," written by George Terry in 1893, where the author said:

"The drying of paint being a process of oxidization, and not evaporation, it is essential that a good supply of fresh air should be provided,"

—adding that the presence of moisture in the air was beneficial, and tends to counteract the tendency of the paint to crack or shrink.

The patent examiner had the Terry article before him when the patent in suit was allowed. Terry adds nothing to the prior art— describes nothing more than the reaction which takes place when paints are dried in the open atmosphere. If Grosvenor claimed a process for rapid drying of varnish by exposing it before open windows in a drying room, Terry might be a legitimate anticipation. Terry not only fails to indicate that moisture increases the rate of drying, but he makes no suggestion of any advantage to be secured by the rapid circulation of currents of air or other oxidizing agents across the surface of the material. Terry suggests no particular quantity of moisture, the farthest he goes being the suggestion that the ideal drying condition would be a hot, humid day in an open loft. These seem to be precisely the conditions to which manufacturers now object. He says that the presence of moisture is beneficial rather than otherwise, but the only benefit indicated is to counteract a tendency to crack or shrink. Terry at best can only anticipate the drying of paint under the action of heat, fresh air, and whatever moisture nature happens to give in the air. With only that information, it is difficult to see how the time for drying a varnish could be reduced from 36 hours to 12 or 8.

Grosvenor took a decided and important step in advance. His process cuts down the time of drying one-half, and in that way saves thousands of dollars worth of investment tied up in time and space in the manufacture of articles which are provided with such coatings. Grosvenor is the first to take this step and reach the desired result. No prior reference points out that the use of moisture in excess of natural humidity would be of any value. Indeed, for all that is said in the prior art, an excess of moisture might be a disadvantage.

Schultze's patent covers an apparatus for drying green lumber; no other material being mentioned or suggested. There is nothing in that patent to suggest the use of the apparatus for the drying of siccative coatings.

Victorson nowhere suggests the introduction of moisture in the operation of his process; he employed only heat and the circulation of air.

The two Gathmann patents are substantially the same, and it is evident that the inventor had in mind the drying (by evaporation) of water-containing substances only, whether such substances be "vegetable, mineral, animal, or compound substances." He nowhere refers

to siccative coatings nor to hardening the same by oxidization. "The various modes of procedure described will depend upon the substance or material to be dried, as, for instance, upon the percentage of moisture contained in such substance or material, or the bulk thereof, or both, and also upon the physical character of the substance or material." It is true that in his 1904 patent he said that, instead of producing saturation of the air by circulation, he might effect it in the drying chamber by means of vapor evolved from the substance or material to be dried, or might produce the initial vapor-laden atmosphere by admitting vapor, as steam, to the drying chamber, then heat the vapor-laden atmosphere to a vaporizing temperature, establish the circulation, and proceed with the condensation as above set forth; but there is nothing in the Gathmann patents to suggest that the introduction of moisture—for 25 years the bugaboo of users of siccative coatings—would accelerate their hardening.

### The Heath & Milligan Prior Use.

I am not at all impressed with this defense. It seems that some years ago a fresh-air device was introduced into the Heath & Milligan paint shop, primarily to purify the atmosphere. The same device had been installed in the Public Library in Chicago. There is some evidence that the conduit was turned into a room where sample panels had been painted and set up for drying. This use was discontinued, and so far as the record shows no one else ever adopted it until after the publication of the Grosvenor patent.

The patent is held valid.

### Infringement.

[4] The testimony of Anderson, the general manager of defendant's factory, leaves no doubt in my mind but that the general principles of the Grosvenor patent were infringed. The kiln room was equipped with steam radiators, a pet cock in the steam pipe, "serving to let live steam into the atmosphere of the kiln," and an electric fan for the purpose of circulating the air. The claim that the thermometer and hygrometer were not consulted by the defendant does not relieve the infringement.

A decree may be prepared, finding the patent valid, claims 2 and 4 infringed, and the usual reference for an accounting.